OPINION
{¶ 1} Plaintiff-appellant, the state of Ohio, appeals from a decision of the Warren County Court of Common Pleas granting in part the motion to suppress evidence of defendant-appellee, Robert Henderson. For the reasons that follow, we reverse the decision of the trial court in part and affirm in part.
 {¶ 2} On the evening of January 28, 2002, city of Franklin Police Officer Steven Dunham went to the home of Rick Wheeler. Officer Dunham who was in uniform and on duty, expected to find his wife there. Wheeler answered the door and Officer Dunham saw his wife inside the apartment. He asked Wheeler if he could enter. Wheeler did not verbally answer, but stepped back from the door allowing Officer Dunham to enter. Officer Dunham stepped into the apartment and walked directly into the kitchen where he had seen his wife.
 {¶ 3} He immediately saw appellee sitting at the kitchen table. Appellee was startled by Officer Dunham's presence and began taking items out of a black shaving kit which was on the table in front of him and stowing them in his pants pockets. Officer Dunham directed him to stop, and with one hand on appellee's arm, led him out of the kitchen, toward the front door. Officer Dunham carried the shaving kit in his other hand. Appellee suddenly darted into the bathroom, locking the door behind him. Officer Dunham heard the sound of the toilet flushing. He set aside the shaving kit and broke down the bathroom door. He sprayed appellee with mace, threw him to the floor, handcuffed him and told him he was under arrest. Officer Dunham then picked up the shaving kit and discovered inside a small leather case. He opened the case and found inside scales and a white, powdery substance, later identified as cocaine. Other Franklin Police officers arrived shortly. They obtained consent from Wheeler to search the apartment.
 {¶ 4} Some seven hours after his arrest, at 4:30 a.m., appellee was interrogated by Franklin Police Officer Brian Pacifico. Before questioning began, Officer Pacifico read appellee his Miranda rights. Appellee acknowledged that he understood them and executed a written waiver of his Miranda rights. When Officer Pacifico questioned appellee about the "white powdery substance" found in the small case inside the shaving kit, appellee indicated that he would not answer the question without an attorney present. Officer Pacifico did not press appellee for an answer, but began a new line of questioning.
 {¶ 5} Appellee was subsequently indicted on counts of possession of cocaine, tampering with evidence, and obstructing official business. He moved to suppress the evidence gained in the search and to suppress the statements he made to the police officers. In ruling on the motion, the trial court found that there was probable cause to arrest appellee but that the search of the shaving kit was improper without a warrant. Thus, the trial court granted the motion in part, suppressing the evidence discovered in the shaving kit. However, the trial court found admissible the statements made by appellee to the police officers.
 {¶ 6} The state appeals raising two assignments of error. Appellee cross-appeals, also raising two assignments of error. Our resolution of the state's first assignment of error renders moot its second assignment of error. The assignments of error are as follows.
Assignment of Error No. 1
 {¶ 7} "The search was a search incident to arrest, thus the evidence should be admitted."
Assignment of Error No. 2
 {¶ 8} "Even if the court finds that the search was not incident to arrest, the evidence should have been admitted because the evidence would ultimately have been discovered by other means."
 {¶ 9} In its first assignment of error, the state contends that the trial court improperly granted appellee's motion to suppress the evidence found inside the shaving kit. The state contends that the warrantless search of the bag was a valid search incident to appellee's arrest.
 {¶ 10} When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366. Accordingly, when reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's findings of fact if they are supported by competent, credible evidence. State v. McNamara (1997),124 Ohio App.3d 706, 710. However, an appellate court reviews de novo whether the trial court's conclusions of law, based on those findings of fact, are correct. State v. Anderson (1995), 100 Ohio App.3d 688, 691.
 {¶ 11} The Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution require police to obtain a warrant based upon probable cause before they conduct a search. However, the warrant requirement is subject to a number of well-established exceptions. Coolidge v. New Hampshire (1971), 403 U.S. 443, 455,91 S.Ct. 2022, 2032. Like the plain view doctrine and the inventory search, a search incident to a lawful arrest is one such exception. New York v.Belton (1981), 453 U.S. 454, 101 S.Ct. 2860. To be a valid search incident to a lawful arrest, however, the warrantless search must be limited to the offender's person and the area within his immediate control. Id. This exception exists as a means to protect the arresting officer's safety by denying the person arrested access to any weapons, and, moreover, as a means to prevent the destruction of evidence. Chimelv. California (1969), 395 U.S. 752, 89 S.Ct. 2034; State v. Rodriguez
(1992), 83 Ohio App.3d 829, 833.
 {¶ 12} In granting the motion to suppress, the trial court relied on the reasoning of State v. Myers (1997), 119 Ohio App.3d 376. InMyers, law enforcement officers responded to a report of a potential burglary. Upon arriving at the scene, they discovered that the defendant had broken the glass out of the front door in order to gain access to the home where she rented a room. Seeing the damage to the door, the owner of the home requested that she be arrested. The defendant became infuriated and attempted to strike one of the officers. The defendant was arrested and handcuffed. Subsequent to the arrest, one of the officers located the defendant's purse on a table and searched it for verification of her identification. During the course of this search, drug paraphernalia was found in her purse.
 {¶ 13} In Myers, the evidence seized from the defendant's purse was properly suppressed as it was never shown that the defendant had physical control over her purse at the time of arrest. Absent a showing that she had physical control of the purse, the arresting officers were unable to utilize the search incident to arrest exception to the warrant requirement.
 {¶ 14} In the present case, despite appellee's argument to the contrary, the search of the shaving kit was a valid search incident to a lawful arrest. In this instance, the focus of our inquiry is whether the shaving kit was within the immediate control of the suspect at the beginning of the encounter with law enforcement officials and whether any delay in searching the container can be viewed as reasonable in nature. See U.S. v. Nelson (C.A.4, 1996), 102 F.3d 1344, 1347, citing U.S. v.Han (C.A.4, 1996), 74 F.3d 537, 543; U.S. v. Litman (C.A.4, 1984),739 F.2d 137, 139.
 {¶ 15} Appellee's surprised reaction and efforts to conceal items in his pockets provided Officer Dunham with reasonable suspicion to temporarily detain appellee for further investigation. See Terry v. Ohio
(1968), 392 U.S. 1, 21, 88 S.Ct. 1868 (an investigatory stop is constitutionally justifiable when facts give rise to a reasonable suspicion that an individual is currently engaged in or is about to engage in criminal activity or conduct.) Given his reasonable suspicion, and the fact that the two were located in the interior of the home with an unknown number of other individuals, Officer Dunham was warranted in moving appellee to a safer location near the front door before continuing the encounter. Wickliffe v. Gutauckas (1992), 79 Ohio App.3d 224, 227, citing United States v. Mendenhall (1980), 446 U.S. 544, 100 S.Ct. 1870.
 {¶ 16} At the time appellee was first approached by Officer Dunham, he had physical control over the shaving kit. It was resting on a table in front of appellee and appellee was removing items from it. When he was arrested moments later after bolting into the bathroom, the shaving kit was in the room with appellee, only a few feet away. The mere fact that the shaving kit was momentarily out of his reach prior to the actual search is inconsequential. The shaving kit was in appellee's immediate vicinity and the search occurred within moments of the arrest. Accord State v. Sharpe (June 30, 2000), Harrison App. No. 99CA510; Statev. Burnette (July 10, 1996), Hamilton App. No. C-950887; State v.Conklin (Mar. 27, 1995), Butler App. No. CA94-03-064. Any delay in the search was occasioned by appellee's flight to the bathroom and the struggle that ensued. Accordingly, the search of the shaving kit was a valid search incident to a lawful arrest. The state's first assignment of error is sustained, rendering moot the state's second assignment of error.
 {¶ 17} Cross-assignment of Error No. 1
 {¶ 18} "The trial court erred in finding that Officer Dunham's entry into the Wheeler residence was not a violation of Robert Henderson's Fourth Amendment Rights."
 {¶ 19} In his first cross-assignment of error, appellee alleges that Officer Dunham's entry into the home violated his expectation of privacy in the home as an overnight guest.
 {¶ 20} While it is true that an overnight guest has a legitimate expectation of privacy in his host's home, it is equally well-established that "the host may admit or exclude from the house as he prefers."Minnesota v. Olson (1990), 495 U.S. 91, 99, 110 S.Ct. 1684, 1689. An entry or search conducted with the consent of one who has common authority over the premises is a well-established exception to the requirements of both a warrant and probable cause. Schneckloth v.Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041. Consent to enter a residence can be given by anyone who possesses common authority over the premises, and in particular, by the resident of a home. See United Statesv. Matlock (1974), 415 U.S. 164, 94 S.Ct. 988; State v. Greer (1988),39 Ohio St.3d 236. When such consent is given, it is valid against anyone else who may be in the residence, including an overnight guest. See, e.g., id.
 {¶ 21} The trial court concluded that Wheeler consented to Officer Dunham's entrance by standing aside and allowing him to enter. While there was conflicting testimony as to whether Wheeler permitted Officer Dunham to enter or rather indicated that he should wait at the door while his wife was sought, the trial court was in the best position to weigh the credibility of the witnesses and resolve this conflict in the evidence. The trial court's conclusion that implied consent to enter was given is supported by competent and credible evidence in the record.
 {¶ 22} The fact that Wheeler stepped aside to allow Officer Dunham to enter is legally sufficient to conclude that Wheeler impliedly consented to the officer's entry into the home. See State v. Robinson
(1995), 103 Ohio App.3d 490, 495; State v. Schroeder (Oct. 26, 2001), Wood App. No. WD-00-076; State v. Asworth (Apr. 11, 1991), Franklin App. No. 90AP-916. This consent was valid as to all the occupants of the home. Accordingly, the first cross-assignment of error is overruled.
Cross-assignment of Error No. 2
 {¶ 23} "The trial court erred in finding that the arrest of Robert Henderson was based upon probable cause."
 {¶ 24} Probable cause to arrest exists when an officer has knowledge of facts and circumstances "that would sufficiently warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio (1964), 379 U.S. 89, 91,85 S.Ct. 223, 225. When determining whether probable cause to arrest exists, a court reviews the totality of facts and circumstances surrounding the arrest. Id.
 {¶ 25} In the present case, Officer Dunham observed that appellee was surprised to see him and that he immediately became nervous. Appellee hurriedly removed items from the shaving kit, concealing them in his pants pockets. As Officer Dunham led appellee to the front door, appellee bolted toward the bathroom, locking the door behind him. Officer Dunham could hear that appellee had flushed the toilet. Appellee refused to comply with Officer Dunham's requests that he open the bathroom door. Considering the totality of the circumstances, these facts provided Officer Dunham with probable cause to arrest appellee. Accord State v.Conklin, Butler App. No. CA94-03-064. Accordingly, the assignment of error is overruled.
 {¶ 26} The judgment of the trial court is reversed in part and affirmed in part, and this matter is remanded for proceedings consistent with this opinion.
VALEN, P.J., and YOUNG, J., concur.